L

ORIGINAL

FILED-USDC-NDTX-DA
'26 JUN 16 PM4:20
KM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA

v.

DEVIN JACK BRODMAN

NO. 3-26CR-307 L

# INFORMATION

The United States Attorney charges:

At all times material to this Information:

## The Medicare Program

1. The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five who are blind or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

2. Medicare is a "health care benefit program," as defined by 18 U.S.C. § 24(b) and a "Federal Health Care Program" as defined in 42 U.S.C. § 1320a-7b(f).

3. Medicare covers different types of benefits and is separated into different program parts. Medicare Part B covers, among other things, medical services provided by physicians, medical clinics, laboratories, and other qualified health care providers, such as office visits and laboratory testing, that are medically necessary and ordered by licensed medical doctors or other qualified health care providers.

4. Payments under Medicare Part B are often made directly to the health care provider rather than to the patient or beneficiary. For this to occur, the beneficiary would assign the right of payment to the health care provider. Once such an assignment takes place, the health care provider assumes the responsibility for submitting claims to, and receiving payments from, Medicare.

5. When seeking reimbursement from Medicare for provided benefits, services, or items, providers submit claims to Medicare. A Medicare claim is required to contain certain important information, including: (a) the beneficiary's name and Health Insurance Claim ("HIC") Number; (b) the billing codes for the benefit, item, or service provided or supplied to the beneficiary (referred to as Current Procedural Terminology, or CPT, codes); and (c) the name of the referring physician or other health care provider requesting the provided benefit.

6. Medicare paid for claims only if the items or services were medically necessary for the treatment or diagnosis of the beneficiary's illness or injury, documented, and actually provided as represented. Medicare would not pay for items or services that were procured through kickbacks and bribes.

Coverage for Genetic Testing

7. Genetic testing is a type of laboratory service covered by Medicare that uses DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain types of diseases in the future. There are different types of genetic testing, including testing for hereditary diseases.

8. To complete a genetic test, a Medicare beneficiary typically provides a cheek swab ("buccal swab") containing DNA material. Tests are then run for different "panels" of genes identified by the clinical laboratory. Genetic testing typically involves multiple lab procedures that result in billing Medicare using multiple CPT codes, each with its own reimbursement rate.

9. Medicare did not cover diagnostic testing that was not "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). Except for certain statutory exceptions, Medicare did not cover "[e]xaminations performed for a purpose other than treatment or diagnosis of a specific illness, symptoms, complaint, or injury." 42 U.S.C. § 411.15(a)(1).

Parties

10. Defendant **Devin Jack Brodman** was a resident of Coconut Creek, Florida.

11. Anthony Basile was a resident of Boca Raton, Florida.

12. Individual A was a resident of Pompano Beach, Florida.

13. Neva Diagnostics ("Neva") was a laboratory located in Farmer's Branch, Texas, in the Northern District of Texas, and registered as a Medicare Part B provider and Independent Clinical Laboratory. From approximately July 2022 through September 2025, **Brodman** and Basile co-owned Neva.

14. Areahou Diagnostics ("Areahou") was a laboratory located in Dallas, Texas, in the Northern District of Texas, and registered as a Medicare Part B provider

and Independent Clinical Laboratory. From approximately July 2024 through approximately July 2025, **Brodman** and Basile co-owned Neva.

15. Neva and Areahou billed Medicare laboratory testing services, including genetic testing services.

Count One
Conspiracy to Defraud the United States and to
Pay Kickbacks and Bribes in Connection with a
Federal Health Care Program
(Violation of 18 U.S.C. § 371 (42 U.S.C. § 1320a-7b(b)(2)))

16. All preceding paragraphs of the Information are realleged and incorporated by reference as though fully set forth herein.

17. Beginning in at least July 2022 and continuing through at least September 2025, in the Northern District of Texas and elsewhere, defendant **Devin Jack Brodman**, did knowingly and willfully combine, conspire, confederate, and agree with Anthony Basile, Individual A, and others known and unknown to the United States Attorney, to commit certain offenses against the United States, that is:

a. To defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of HHS and CMS in its administration and oversight of Medicare;

b. to violate 42 U.S.C. § 1320a-7b(b)(2)(B), by offering and paying remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in case and in kind, including by check and wire transfer, to any person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program.

Object and Purpose of the Conspiracy

18. It was the object and purpose of the conspiracy for **Brodman** and his coconspirators to unlawfully enrich themselves and others known and unknown to the

U.S. Attorney by, among other things: (a) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for ordering and arranging for laboratory services such as genetic testing; (b) submitting or causing the submission of claims to Medicare for laboratory testing services that were ordered and procured through kickbacks and bribes, ineligible for reimbursement; (c) concealing the submission of the kickbacks; (d) diverting proceeds of the fraud for their personal use and benefit.

Manner and Means of the Conspiracy

19. The manner and means by which **Brodman** and his coconspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

20. In approximately July 2022, **Brodman** and Basile purchased Neva. **Brodman** and Basile operated Neva as co-owners.

21. In approximately July 2024, **Brodman** and Basile purchased Areahou. **Brodman** and Basile operated Areahou as co-owners.

22. Both Neva and Areahou provided laboratory services, including genetic testing services, as Medicare Part B providers.

23. Beginning in July 2022 and continuing through May 2025, **Brodman** and Basile offered and paid kickbacks and bribes to individuals or "marketers" to induce them to order and arrange for laboratory testing services, such as genetic testing services, to be sent to Neva and Areahou.

24. **Brodman** and Basile paid the kickbacks and bribes by drafting agreements with the marketers that made it appear as though they were paying the marketers flat fees.

However, the agreements were fraudulent and concealed the true nature of the kickback arrangement.

25. **Brodman** and Basile submitted or caused to be submitted claims to Medicare for Neva and Areahou's laboratory services that had been procured through kickbacks. These services induced through unlawful kickbacks and bribes were in violation of the Federal Anti-Kickback Statute and not eligible for reimbursement.

26. In total, Neva and Areahou billed Medicare approximately $65,554,904 in laboratory testing services and were paid approximately $43,394,070.

Overt Acts

27. In furtherance of the conspiracy, and to accomplish its objects and purpose, **Brodman** and his coconspirators committed and caused to be committed, in the Dallas Division of the Northern District of Texas and elsewhere, the following overt acts, among others:

28. On or about September 13, 2024, **Brodman** caused a wire transfer in the amount of approximately $25,000 from Neva's bank account to Individual A's bank account as a bribe and kickback for Individual A referring laboratory testing services to Neva.

All in violation of 18 U.S.C. § 371.

Notice of Forfeiture
(18 U.S.C. § 982(a)(7))

29. The allegations contained Count One of this Information are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

30. Upon conviction of the offense set forth in Count One of this Information, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

31. The above-referenced property subject to forfeiture includes, but is not limited to, a "money judgment" in the amount of U.S. currency constituting the gross proceeds traceable to the offense.

32. Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States intends to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

RYAN RAYBOULD
UNITED STATES ATTORNEY

*/s/ Marty Basu*

MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: 214-659-8600
Fax: 214-659-8812
Email: Marty.Basu@usdoj.gov